# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 5, 2026

Lyle W. Cayce
Clerk

No. 25-50010

Lucy Abajian-Salon,

*Plaintiff—Appellant*,

*versus*

City of San Antonio, Texas,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CV-1020

Before Haynes, Duncan, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Appellant-Plaintiff Lucy Abajian-Salon was terminated from her position as a probationary police officer with the San Antonio Police Department ("SAPD") after she was involved in an off-duty incident involving construction workers in her neighborhood. The construction workers alleged that Abajian-Salon confronted them concerning the noise they were making and caused damage to their property. The SAPD

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-50010

conducted an internal investigation and terminated Abajian-Salon upon finding that her involvement in the incident was contrary to SAPD rules and regulations. Abajian-Salon filed suit against the City of San Antonio (the "City"), alleging discrimination under Title VII of the Civil Rights Act, 28 U.S.C. § 1981, and the Texas Labor Code. The district court granted the City's motion for summary judgment, dismissing all claims with prejudice. For the reasons set forth below, we AFFIRM.

## I.   Background

### A.   Factual Background

Abajian-Salon is a female who was born in 1974 in Lebanon and is of an Armenian and Lebanese ethnic background. Abajian-Salon worked at the SAPD from January 1, 2020, until her termination in April 2021. Upon being hired, Abajian-Salon's position was subject to a 52-week probationary period.

In the weeks leading up to December 18, 2020, Abajian-Salon made calls to the Bexar County Sheriff's Office to make noise complaints against construction workers in her subdivision. On the morning of December 18, 2020, Abajian-Salon called the Bexar County Sheriff's Office's non-emergency number to report the noise coming from the construction workers' music speaker, but when there was no answer, she and her daughter went to the construction site. The workers asserted that Abajian-Salon pushed their speaker onto the ground and damaged an air compressor to the point that it was no longer operational. Abajian-Salon gave one of the construction workers $100 to, according to the construction worker, cover the damage, or, by Abajian-Salon's account, as a sign of good faith for him to stop playing loud music. A construction worker made a complaint to the Sheriff's Office, but when officers arrived, he told them that he and Abajian-Salon had handled the matter civilly and that he did not want to file a report. The events of December 18, 2020, are herein referred to as the "Incident."

No. 25-50010

Abajian-Salon reported the Incident to her supervisor, who initiated an investigation with the SAPD Internal Affairs Department (the "Investigation"). The Investigation found that Abajian-Salon's "alleged conduct is a violation of the SAPD Rules and Regulations" which state that "[m]embers, on-or off-duty, shall be governed by the ordinary and reasonable rules of good conduct and behavior, and shall not commit any act tending to bring reproach or discredit on themselves or the department."

On April 6, 2021, Chief William McManus notified Abajian-Salon of her termination by serving her with a form stating:

> On December 18, 2020, you were involved in an off-duty disturbance which developed into a criminal investigation for the offense of Criminal Mischief. Based on the results of that investigation, it has been determined that you have not met the fundamental requirements to be a San Antonio Police Officer.

### B.     Procedural History

Abajian-Salon filed suit in the Western District of Texas against the City, asserting causes of action for discrimination based on age and sex in violation of 42 U.S.C. § 2000e-(2)(a) (hereinafter "Title VII of the Civil Rights Act" or "Title VII") and the Texas Labor Code, and discrimination based on ethnicity, race, and national origin in violation of Title VII, the Texas Labor Code, and 42 U.S.C. § 1981.

The district court granted the City's motion for summary judgment on all claims and entered a final judgment dismissing the action with prejudice.[1] Abajian-Salon promptly appealed.

_____

[1] The district court analyzed discrimination based on national origin and ethnicity as one claim. We agree. While Title VII does not explicitly provide for a cause of action for discrimination based upon ethnicity, *see* 42 U.S.C. § 2000e-2(a)(1), (2), we have historically used the terms "national origin" and "ethnicity" interchangeably in the Title

No. 25-50010

## II.    Jurisdiction & Standard of Review

The district court had federal question jurisdiction under 28 U.S.C. § 1331 because Abajian-Salon brought claims arising under 42 U.S.C. § 2000-e(2)(a) and 42 U.S.C. § 1981. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the district court entered a final judgment.

We "review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015) (citation omitted).

## III.    Discussion

### A.    Claims Not Considered on Appeal

As a preliminary matter, Abajian-Salon has abandoned all claims under the Texas Labor Code, all claims under § 1981, and age- and race-discrimination claims under Title VII.

We "will not raise and discuss legal issues that [appellant] has failed to assert." *Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987). "Claims not pressed on appeal are deemed abandoned." *Davis v. Maggio*, 706 F.2d 568, 571 (5th Cir. 1983) (per curiam). At most, she addressed one line on all except national origin and sex discrimination. Accordingly, we need not address any other issues, and we affirm those given the lack of appeal.

Additionally, we do not consider any attempt by Abajian-Salon to make a claim of retaliation for the first time on appeal. She mentions retaliation twice in her initial brief: once in stating that oral argument would "permit a full discussion of the facts and evidence of . . . retaliation," and

_____

VII context. *See, e.g.*, *Sreeram v. La. State Univ. Med. Ctr.-Shreveport*, 188 F.3d 314, 320–21 (5th Cir. 1999).

4

once in stating that "the Fifth Circuit analyzes the discrimination and retaliation claims under the *McDonnell Douglas* Framework." In her reply brief, Abajian-Salon states that claims under § 704(a) of Title VII are "generally known as retaliation claims." But neither § 704(a), nor "retaliation" in *any* regard, are mentioned in Abajian-Salon's complaint. "[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007) (citation omitted). Therefore, we hold that Abajian-Salon may not raise retaliation on appeal.

### B.    Summary Judgment as to Title VII Claims of Discrimination Based on National Origin and Sex

The remaining claims are those of discrimination based on national origin and sex under Title VII. For the reasons below, we hold that summary judgment in favor of the City should be affirmed as to both.

#### 1.    *Applicable Law*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party"—here, Abajian-Salon. *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 616 (5th Cir. 2020) (citation modified). We "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation omitted).

Title VII of the Civil Rights Act protects employees from discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(1), (2). Where, as here, a discrimination claim under Title

VII is based on circumstantial evidence,[2] we follow the three-step, burden-shifting framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).[3] Under this framework, the plaintiff must first make a prima facie case, which the district court found she did. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam), *abrogated on other grounds by*, *Hamilton v. Dall. Cnty.,* 79 F.4th 494 (5th Cir. 2023) (en banc).

---

[2] The only evidence Abajian-Salon presents is circumstantial. "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact . . . without any inferences or presumptions." *Palacios v. City of Crystal City*, 634 F. App'x 399, 402 (5th Cir. 2015) (per curiam) (citation modified). Evidence is circumstantial if "inference is required for the evidence to be probative." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897–98 (5th Cir. 2002). Here, the evidence Abajian-Salon presents consists of circumstances under which other probationary officers under Chief McManus's supervision were involved in public incidents but were treated differently than Abajian-Salon. These examples are circumstantial evidence because discrimination based on protected traits must be *inferred* from the fact that individuals *without* the protected traits were treated differently.

[3] Abajian-Salon argued in her initial briefing that, in its then-upcoming decision in *Ames v. Ohio Department of Youth Services*, 87 F.4th 822 (6th Cir. 2023) (per curiam), *cert. granted*, 145 S. Ct. 118 (2024), the Supreme Court might adopt the D.C. Circuit's holding in *Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008), and hold that the *McDonnell Douglas* test no longer applies. In *Brady*, the D.C. Circuit held that *McDonnell Douglas* does not apply at the summary judgment stage. 520 F.3d at 493. It cited the Supreme Court in *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983), which held that "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant." *Id.* at 715. However, we have consistently held that this *Aikens* holding only applies once there is a trial on the merits, not at the summary judgment stage. *Hague v. Univ. of Tex. Health Sci. Ctr. at S.A.*, 560 F. App'x 328, 335 (5th Cir. 2014). In fact, we have explicitly rejected the *Brady* approach. *Stallworth v. Singing River Health Sys.*, 469 F. App'x 369, 372 (5th Cir. 2012) (per curiam). The Supreme Court has since released its decision in *Ames v. Ohio Department of Youth Services*, 605 U.S. 303 (2025), and did not alter, but instead applied, the *McDonnell Douglas* test. Therefore, we apply the *McDonnell Douglas* test here.

Then, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *McCoy*, 492 F.3d at 557. The employer's burden at this stage is "only one of production, not persuasion, and involves no credibility assessment." *Id.* Furthermore, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).

Lastly, if the employer meets its burden, as the district court found here, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). "[T]he question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (citation omitted). The district court found that was not shown.

### 2.    *Analysis*

As the district court noted, the evidence regarding the prima facie case is "not completely convincing" on the issue of whether those officers were "similarly situated," but nonetheless it found that there was a prima facie case for purposes of moving to the rest. On the next line, the district court found that the City provided a legitimate, non-discriminatory reason for the termination: the Incident. We agree.

Thus, as a result, the burden shifted back to Abajian-Salon to make a showing that there was a genuine issue of fact concerning whether the City's proffered reason was pretextual. *Burdine*, 450 U.S. at 253. She did not.

First, in response to the City's motion for summary judgment, Abajian-Salon argued that the City's proffered reason for her termination is false. She asserted that Chief McManus testified that the City terminated her

"because of the complaint and investigation" regarding the Incident. She claimed that this is inaccurate because "the assertion that she was the subject of a complaint, damage or criminal mischief is simply false and not supported by the [Investigation]" since "the Bexar County deputies determined the matter was a civil matter and there was no investigation nor a complaint." But Abajian-Salon mischaracterized McManus's testimony. McManus testified that the reason he terminated her was "about her actions, not about the criminal case specifically. It was about what she did . . . as a member of th[e] department." This is consistent with the Investigation's conclusion that Abajian-Salon's "alleged conduct is a violation of the SAPD Rules and Regulations," which state that "[m]embers, on-or off-duty, shall be governed by the ordinary and reasonable rules of good conduct and behavior, and shall not commit any act tending to bring reproach or discredit on themselves or the department."

Second, she argued that Chief McManus admitted he wrongfully terminated her. She cited McManus's testimony that he does not have authority to fire someone with insufficient proof and "would never do that," and that if "she didn't commit criminal mischief, [and] wasn't involved in [the Incident]," then he fired her wrongly. But he also, as the district court correctly characterizes, stated that in this case, he *did* have sufficient basis to terminate her employment during the probationary period. Furthermore, McManus testified that he terminated her on the belief that she *was* involved in the Incident and engaged in the conduct of which she was accused.

Third, Abajian-Salon argued that the City "conducted essentially no investigation" and "failed to follow its own policies and procedures." But we agree with the district court that the record shows the results of the Investigation were a sufficient basis to terminate her employment, as the relevant SAPD Collective Bargaining Agreement provides that "during the Officer's probationary period an Officer may be disciplined or discharged

without written notice and/or without cause at the discretion of the Chief."

Therefore, even if Abajian-Salon made a prima facie case of discrimination, the City set out a legitimate, non-discriminatory explanation for her termination, which Abajian-Salon failed to show was pretext. As such, summary judgment as to her claim of discrimination based on national origin was proper.

Concerning her sex-discrimination claim, in response to the City's motion for summary judgment, Abajian-Salon argued only that "[t]he arguments above as to Ethnicity, Race and National Origin and Age apply with regard to the sex discrimination claims" and "[t]hey are incorporated again herein for all purposes." Therefore, summary judgment was proper as to Abajian-Salon's sex-discrimination claims for the same reasons it was proper for the claim of discrimination based on national origin.

## IV.    Conclusion

For the reasons discussed, we AFFIRM the district court's grant of summary judgment as to all claims and dismissal of the case with prejudice.